UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BAILEY KATHLEEN ROSINSKI,** | **2:23-CV-11658-TGB-APP** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL** |
| **JEREMY HOWARD,** | |
| Respondent. | |

Petitioner Bailey Kathleen Rosinski ("Rosinski"), confined at the Huron Women's Correctional Facility in Ypsilanti, Michigan, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. In her pro se application, Rosinski challenges her conviction for armed robbery, MCL § 750.529, assault with intent to rob while armed, MCL § 750.89, assault with intent to do great bodily harm less than murder, MCL § 750.84, and assault with a deadly weapon, MCL § 750.82.

The Court denies the petition, denies a certificate of appealability, and grants Morgan leave to proceed in forma pauperis on appeal.

## I.   BACKGROUND

Rosinski's conviction arises out of an incident in which she and her boyfriend, Justin Tyler Bembeneck, assaulted Rosinski's grandparents

1

and uncles in her grandparent's home. *See* ECF No. 6. Rosinski and
Bembeneck were tried and convicted by separate Leelanau County
Circuit Court juries. *Id.* at PageID.113. This Court recites the facts from
the Michigan Court of Appeals' opinion verbatim affirming Rosinski's
conviction, presumed correct on habeas review. 28 U.S.C. § 2254(e)(1).
*See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants['] convictions arise from the armed robbery of
> Rosinski's grandmother, the stabbings of Rosinski's
> grandfather and Richard Rosinski (Richard), and the assault
> of Brian Rosinski (Brian). Richard and Brian are Rosinski's
> uncles, and they lived with Rosinski's grandparents, Francis
> Rosinski (Francis) and Helen Rosinski (Helen), at all relevant
> times. Before the crimes were committed on January 10, 2019,
> Rosinski resided in her grandparents' home for two weeks.
> During that time, her grandparents loaned her a significant
> amount of money. They asked Rosinski to leave the home in
> the fall of 2018, and she moved in with Bembeneck.
>
> On January 9, 2019, Bembeneck, who was on dual supervision
> for parole and probation, reported for a drug screening and
> attempted to submit a "fraudulent urine sample." He fled
> when he was caught. On the morning of January 10, 2019,
> Rosinski cut off Bembeneck's tether and disposed of it. A
> warrant was issued for Bembeneck's arrest, and defendants
> decided to leave the state.
>
> On the evening of January 10, 2019, defendants arrived at the
> home of Rosinski's grandparents in a vehicle that belonged to
> Bembeneck's mother. Bembeneck had never met Rosinski's
> family, and defendants entered the home without knocking.
> After they were greeted by Helen, defendants grabbed her by
> the arms and "marched" her to the bedroom that she shared
> with Francis. Rosinski demanded money and went to the

bedroom closet, which contained an unlocked safe and a metal strongbox. Bembeneck pushed Helen to the floor and assisted Rosinski with removing items from the closet. After defendants left the bedroom, Helen locked the bedroom door and contacted law enforcement. Bembeneck exited the home through a sliding glass door, which led to a deck. Rosinski repeatedly and aggressively demanded money from Francis, who was in the living room.

Brian came upstairs from the basement. Upon hearing Rosinski's demands, Brian suggested that Rosinski obtain employment, and an argument ensued. Rosinski took a long "kitchen knife" from her purse and raised the knife "like she was going to stab" Brian.[1] Brian stated that he was going to call 911 and took out his cell phone. Seconds later, Bembeneck reentered the home and hit Brian on the head with a flashlight. In the meantime, Francis approached Rosinski from behind, grabbed both of her arms, and "Brought [her arms] down alongside of her." Francis then moved Rosinski toward the front door in an effort to "boot her out[.]" Bembeneck hit Francis on the head with the flashlight, and Francis "released" Rosinski. Rosinski then "turned towards [Francis] with [the] knife," and she stabbed Francis twice in the leg. Bembeneck picked up Brian's cell phone, which was on the floor, and left the home. As Rosinski was preparing to leave, Richard came upstairs from the basement. Rosinski stabbed him in the chest and neck and left the home.

Law enforcement arrived after defendants fled the scene. Francis, Brian, and Richard were transported to the hospital. After a lengthy police chase, defendants were apprehended and arrested. Items belonging to Francis and Helen were found inside the vehicle, including a checkbook, coins, certain documents, and the strongbox. A flashlight and Brian's cell phone were also found in the vehicle.

---

[1] Rosinski testified at her trial that she had obtained the knife from her grandparents' kitchen. (Footnote in original).

*People v. Bembeneck*, No. 352561, 2022 WL 188697, at *1–2 (Mich. Ct. App. Jan. 20, 2022), *appeal denied sub nom. People v. Rosinski*, 977 N.W.2d 561 (Mich. 2022).

Rosinski seeks a writ of habeas corpus on the following grounds:

> I. The defendant-appellant is entitled to a new trial where the trial court erred in excluding certain evidence thereby denying her of her constitutional right to a fair trial as guaranteed by the U.S. Constitution's right to due process.
>
> II. The defendant-appellant is entitled to a reversal of her conviction for armed robbery as the evidence presented at trial was legally insufficient to prove beyond a reasonable doubt that she committed said offense.
>
> III. The defendant-appellant is entitled to a new trial where the trial court erred in admitting evidence of defendant's prior convictions where the prior convictions were inadmissible pursuant to Michigan Rule of Evidence 609 thereby denying her of her constitutional right to a fair trial as guaranteed by the U.S. Constitution's right to due process.

ECF No. 1, PageID.5, 7, 8.

## II.   LEGAL STANDARD

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

4

adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

5

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## III. DISCUSSION

### A. The Fourth Amendment

Rosinski first argues that the trial judge erred in denying her motion to suppress recordings of conversations made between her and Bembeneck when both were lodged in separate cells in the Leelanau County Jail. She argues that jail personnel's warrantless tape recording of conversations with her co-defendant violated her Fourth Amendment right to privacy. ECF No. 1, PageID.32.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims—not whether he or she,

6

in fact, did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *supplemented,* 595 F. Supp. 2d 775 (E.D. Mich. 2009), *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).

Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s] but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at 812–13 (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994), *as amended on denial of reh'g and reh'g en banc* (Oct. 13, 1994)).

Rosinski was afforded the opportunity to present her Fourth Amendment claim to the state trial court in her pre-trial motion to suppress. Rosinski was later able to present her Fourth Amendment claim to Michigan's appellate courts. That is sufficient to preclude review of the claim on habeas review. *See Good v. Berghuis*, 729 F.3d 636, 640

(6th Cir. 2013). Accordingly, Rosinski is not entitled to relief on her first claim.

## B. Sufficiency of the Evidence

Rosinski next contends that there was insufficient evidence to convict her of armed robbery against her grandmother. ECF No. 1, PageID.38–44.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, when reviewing the sufficiency of the evidence to support a criminal conviction, the crucial question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt[;] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19 (internal citations omitted) (emphasis in original).

A federal habeas court cannot overturn a state court decision that rejects a 'sufficiency of the evidence' claim simply because the federal court disagrees with the state court's resolution. Rather, a federal court may grant habeas relief only if the state court decision was an objectively

unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

Rosinski argues that there was insufficient evidence to convict her of committing armed robbery against her grandmother: neither Rosinski nor Bembeneck displayed or brandished a knife or any other weapon while in the bedroom with her grandmother. Rosinski argues that she and her co-defendant had already removed the items from the bedroom and had left the bedroom before Rosinski took out her knife in the living room. Rosinski further notes that her grandmother remained in the bedroom and did not see Rosinski take out the knife or display it to her grandfather and uncles. *See* ECF No. 1, PageID.42.

The elements of armed robbery are: "(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in

the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon." *People v. Chambers*, 742 N.W.2d 610, 614 (Mich. Ct. App. 2007) (internal footnote omitted).

The Michigan Court of Appeals initially rejected the claim when addressing Mr. Bembeneck's sufficiency of evidence claim:

> In this case, defendants used force on Helen by grabbing her by the arms and "march[ing]" her to the bedroom, where they removed items from the closet. Bembeneck also pushed Helen to the ground. Although there is no evidence that either defendant possessed "a dangerous weapon" or purported to have a dangerous weapon while they were in the bedroom, Rosinski later produced the large kitchen knife from her purse. When Rosinski produced the knife, the larceny was not yet complete. Indeed, both defendants were still on the grandparents' property and at least one of the items from the closet was in the vehicle. See *id.*
>
> Evidence also supports that Rosinski had her grandparents' checkbook in her purse at all relevant times. Specifically, Francis testified that he kept a checkbook in a desk. Brian saw Rosinski's purse in a chair "[r]ight next to the desk," and the checkbook was found in Rosinski's purse after she was arrested. Rosinski lived in her grandparents' home for two weeks in the fall of 2018, thereby giving her the opportunity to discover where her grandparents kept their checkbook. Importantly, Brian noted that Rosinski had previously taken "checks out of [the] checkbook." Given that Bembeneck had never been to the grandparents' home before January 10, 2019, the jury could have concluded that Rosinski placed the

checkbook in her purse while she was in the home and that the larceny was therefore not complete until Rosinski left the home with her purse and the checkbook. Therefore, a rational jury could conclude that Rosinski possessed a dangerous weapon in the course of committing the larceny.

*Bembeneck*, 2022 WL 188697, at * 8.

The Michigan Court of Appeals subsequently employed the same rationale in rejecting Rosinski's sufficiency of evidence claim:

Rosinski argues that there was insufficient evidence to convict her of armed robbery because she did not threaten Helen with the knife in the bedroom. However, as already discussed above, a rational jury could conclude that Rosinski committed armed robbery. Although Rosinski argues on appeal that the evidence was insufficient because Rosinski did not produce the knife until after she left the bedroom and did not threaten Helen with the weapon, "a dangerous weapon" need only be produced "in the course of committing the larceny[.]" See *Chambers*, 277 Mich App at 7. As already discussed, the knife was produced before defendants left the home and during the time that Rosinski possessed at least one stolen item in her purse. See *March*, 499 Mich at 402 (noting that one of the elements of larceny is "the carrying away" of the stolen property). Additionally, there is no requirement that the weapon be possessed or used at the same time that force was used against the named victim. See MCL 750.529; MCL 750.530. Therefore, because the knife was produced "in the course of [Rosinski] committing the larceny," we conclude that sufficient evidence was presented to support the armed robbery conviction.

*Id.* at * 9 (internal footnotes omitted).

Effective July 1, 2004, the Michigan Legislature amended both the armed robbery and unarmed robbery statutes. *See People v. Morson*, 685 N.W.2d 203, 212 n.2 (Mich. 2004) (Corrigan, J., concurring). Notably, the

11

unarmed robbery statute has now been amended to include the following definition:

> "As used in this section, 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."

MCL § 750.530(2).

Michigan's armed robbery statute, MCL § 750.529, which Rosinski was convicted under, states, in pertinent part:

> "A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon," ...is guilty of armed robbery.

"It is undisputed that MCL § 750.529 and MCL § 750.530 must be read together, armed robbery requires that a person be 'engage[d] in conduct proscribed under [MCL 750.530].'" *People v. Williams*, 792 N.W.2d 384, 387 (Mich. Ct. App. 2010), *aff'd,* 814 N.W.2d 270 (Mich. 2012).

By amending the robbery statutes, the Michigan Legislature sought to explicitly reinstate the "transactional approach" to armed and unarmed robbery, whereby any force used after initial larceny to accomplish flight or escape is sufficient to establish the elements of robbery. *Morson*, 685 N.W.2d at 212, n.2; *Turner v. Warren*, No. 05-

72274, 2006 WL 1109300, at *3, n.3 (E.D. Mich. Apr. 26, 2006). The Michigan Court of Appeals has since held that force used after theft to flee or escape is sufficient to establish the elements of armed robbery. *See People v. Passage*, 743 N.W.2d 746, 749–50 (Mich. Ct. App. 2007) ("[T]he use of any force against a person during the course of committing a larceny, which includes the period of flight, is sufficient under the statute. 'Force' is nothing more than the exertion of strength and physical power.") (citing *Random House Webster's College Dictionary* (2011)). Rosinski took out the knife and assaulted both her grandfather and uncles to escape from the house after taking property from her grandmother. This alone provides sufficient evidence to establish that Rosinski committed an armed robbery.

Additionally, even though Rosinski may not have assaulted her grandmother with a knife, she attacked her grandfather and uncle with the blade during the escape. Michigan's unarmed robbery statute states that to be guilty of robbery, force or violence must be employed "against any person who was present or assaulted or put the person in fear." This language has been incorporated by reference into Michigan's armed robbery statute. *Chambers*, 742 N.W.2d at 614. There is no requirement under Michigan law that the targeted victim of the robbery be assaulted with a weapon, only that any person present during the robbery be assaulted with a weapon. *See, e.g., Passage*, 743 N.W.2d at 748–49 (sufficient evidence to support conviction for robbery established that

defendant used force and violence where they—during flight or attempted flight— physically struggled with and kicked store personnel).

Lastly, although the Michigan Court of Appeals indicated that there was no evidence that Rosinski possessed a knife when she took her grandmother into the bedroom, Rosinski herself testified at trial that she grabbed knives from her grandparents' kitchen when she came into the house. ECF No. 7-10, PageID. 502. Rosinski brandished a knife against her grandfather as soon as she left the bedroom. One may reasonably infer that Rosinski possessed a knife when she was inside her grandparents' bedroom.

Under Michigan law, a person is guilty of armed robbery if they possessed a dangerous weapon during a larceny, regardless of whether the weapon was seen by the victim(s). *See People v. Hayden*, 348 N.W.2d 672, 683 (Mich. Ct. App. 1984); *See also People v. Roper*, No. 262672, 2006 WL 3375051, at *2–3 (Mich. Ct. App. Nov. 21, 2006) ("Under the first method for establishing the 'armed' element of the crime, use of an actual weapon, the prosecutor is not required to either submit the weapon used by defendant into evidence or to prove that the victim actually saw the weapon."). Consequently, Rosinski is not entitled to relief on her second claim.

14

## C. Ineffective Assistance of Counsel

Rosinski claims that trial counsel was ineffective for failing to object to introducing Rosinski's prior misdemeanor convictions into evidence. The convictions were inadmissible under MRE 609 in that none involved crimes of theft or dishonesty. ECF No. 1, PageID.45–50.

To prevail on her claim asserting the ineffective assistance of counsel, Rosinski must show that the state court's conclusion regarding the claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel; the petitioner must show: (1) their counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The Michigan Court of Appeals rejected Rosinski's claim. First, the prosecutor did not violate MRE 609. He did not introduce the actual, specific convictions into evidence but only asked Rosinski if she had prior misdemeanor convictions. The Michigan Court of Appeals further ruled that Rosinski had opened the door to questions about her previous criminal history by testifying on direct examination that she had no prior criminal record, unlike her co-defendant. The Michigan Court of Appeals concluded that Rosinski's prior criminal history was admissible under MRE 404(a) because she opened the door to such evidence. Hence,

15

defense counsel was not ineffective for failing to object. *Bembeneck*, 2022
WL 188697, at \*10–11.

Federal habeas courts "'must defer to a state court's interpretation
of its own rules of evidence and procedure' when assessing a habeas
petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting
*Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan
Court of Appeals determined that Rosinski's prior misdemeanor
convictions were admissible under MRE 404(a) because she had opened
the door to such evidence, this Court must defer to that determination in
resolving Rosinski's ineffective assistance of counsel claim. *See
James v. United States*, 217 F. App'x 431, 436–37 (6th Cir. 2007).
Federal habeas courts "cannot logically grant the writ based on
ineffective assistance of counsel without determining that the state court
erred in its interpretation of its own law[.]" *See Davis v. Straub*, 430 F.3d
281, 291 (6th Cir. 2005). Necessarily, the Court is constrained and must
reject Rosinski's claim asserting ineffective assistance of trial counsel.

In any event, even assuming that Rosinski's counsel was ineffective
for failing to move for suppression, Rosinski cannot show that she was
prejudiced by the failure and thus entitled to habeas relief, especially in
light of testimony by four witnesses stating she committed the crimes
charged. *See James*, 217 F. App'x. at 436–37.

The Court denies Rosinski's petition for a writ of habeas corpus.
The Court also denies Rosinski a certificate of appealability. To obtain a

16

certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Demonstrating this unconstitutional denial requires an applicant to show that reasonable jurists could debate whether—or agree that—the petition should have been resolved differently or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong. *Id.* at 484. The Court will deny Rosinski a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. Even though reasonable jurists would not debate the Court's resolution of Rosinski's claims, the issues presented are not frivolous. Therefore, an appeal can be taken in good faith, and Rosinski may proceed in forma pauperis on appeal. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

### IV. CONCLUSION

For the above reasons, Rosinski's petition for a writ of habeas corpus is **DENIED**. The Court further finds that reasonable jurists would not debate this Court's resolution of Rosinski's claims, so issuance of a certificate of appealability is also **DENIED**. *See Slack*, 529 U.S. at 483–

84. If Rosinski nonetheless chooses to appeal, she may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

This case is **DISMISSED WITH PREJUDICE.** This is a final order that closes this case.

**SO ORDERED.**


Dated: May 30, 2024              /s/Terrence G. Berg
                                 HON. TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served via electronic and/or ordinary mail.

Dated:  May 30, 2024                          By:  /s/T. McGovern
                                                    Case Manager

BY THE COURT:

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE